DECISION
{¶ 1} Relator, Rebecca S. Ankenbauer, filed this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for permanent total disability ("PTD") compensation and to enter an order granting such compensation. *Page 2 
 {¶ 2} Pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals, we referred the matter to a magistrate, who has rendered a decision and recommendation (attached as Appendix A), including findings of fact and conclusions of law recommending that this court deny the requested writ. Relator has filed objections to the magistrate's decision, and the matter is now before the court for an independent review. For the reasons set forth below, we overrule relator's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law therein.
 {¶ 3} Relator's latest claim arising out of her employment as a certified nursing assistant with respondent Andover Village Retirement Community, Ltd., dba Miller Health Care Center, occurred on June 5, 2002, and her claim was allowed for "lumbosacral strain and sprain; lumbar herniated discs at L3-4, L4-5."
 {¶ 4} The commission's doctor, Waleed N. Mansour, M.D., examined relator and concluded that she has an 11 percent whole body impairment arising cumulatively in relation to her six claims, and that she is capable of sedentary work.
 {¶ 5} Relator can read, write, do basic math, and completed school through the ninth grade. By her own account she left school during the tenth grade to care for her father who was ill. In addition to her nursing assistant experience, relator has a job history of working in a fast-food restaurant and for approximately ten years in a plant nursery. Relator at the time of her PTD application was 52 years old.
 {¶ 6} In support of her PTD application, relator provided a report by a vocational expert, John Ruth, who concluded that relator's age, work history, physical limitations, and limited education make her unable to undertake sustained remunerative employment. *Page 3 
 {¶ 7} The commission's staff hearing officer ("SHO") entered an order denying relator's PTD application based largely on a report of Dr. Mansour. The SHO concluded that relator's age was not an obstacle to re-employment, that relator's ninth-grade education, of itself, did not reflect a lack of intellectual ability to acquire new job skills, and that relator had a positive job history.
 {¶ 8} The magistrate has found that the SHO's report complies withState ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, because it adequately explains how the SHO considered the factors of education, age, and the semi-skilled nature of relator's nursing assistant position, and this provides some evidence to support the SHO's conclusion.
 {¶ 9} The magistrate further examined the application of Ohio Adm. Code 121-3-34(B) regarding the consideration of vocational factors such as age, education, and work experience. The magistrate found that the SHO had correctly categorized a ninth-grade education as "limited education" for vocational assessment purposes, and had also correctly concluded that a ninth-grade education did not necessarily indicate a lack of intellectual ability for retraining and acquiring new job skills because of relator's ability to read, write, and perform basic math. The magistrate also observed that relator had left school to care for her sick father, and these circumstances did not reflect a lack of intellectual ability by relator to proceed further in school.
 {¶ 10} The magistrate further found that the SHO has correctly considered the ninth-grade education as a neutral factor, that the certified nursing assistant position was semi-skilled, and that an age of 52 is positive factor for re-employment. The magistrate specifically noted that the Supreme Court of Ohio in State ex rel. Ellis v. McGrawEdison *Page 4 Co. (1993), 66 Ohio St.3d 92, upheld the commission's determination that the claimant in that case, aged 51, was relatively young enough that his age was not a hindrance to re-employment.
 {¶ 11} Relator's objections to the magistrate's decision address particularly the magistrate's conclusion that relator's ninth-grade education was a neutral factor and that her employment as a nursing assistant is semi-skilled. Relator also objects to the magistrate's conclusion that these two non-medical factors affect her ability to undertake sustained remunerative employment.
 {¶ 12} We find that relator's objections are not well-taken. The magistrate did not err in finding that the commission's order complied with Noll because the commission set forth the evidence used, which was adequate, and did briefly explain the reasoning for his application of the evidence to the matter and the ultimate decision. Relator has not established that the magistrate and commission erred in concluding that relator's ninth-grade education, although correctly classified under the code as "limited," was a neutral factor towards re-employment because of relator's ability to read, write, and perform math. Nor do we find any inherent error in the magistrate's observation that relator's reason for leaving school, to care for her sick father, was not an indicator that she left school for lack of ability to proceed to undertake further education. Relator became a certified nursing assistant through on-the-job training according to the stipulated record. This, the magistrate correctly concluded, reflects that relator has the capacity to acquire new jobs, whether the nursing assistant position is characterized as unskilled, semi-skilled, or skilled. *Page 5 
 {¶ 13} Because we find that relator's objections to the magistrate's decision in this matter are not well-taken, we adopt the magistrate's recommendation and deny the requested writ of mandamus.
Objections overruled; writ denied.
BRYANT and FRENCH, JJ., concur.
GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 6 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 14} In this original action, relator, Rebecca S. Ankenbauer, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for permanent total disability ("PTD") compensation, and to enter an order granting the application. *Page 7 
Findings of Fact: {¶ 15} 1. Relator has six industrial claims arising out of her employment as a certified nursing assistant with respondent Andover Village Retirement Community LTD, dba Miller Health Care Center, a state-fund employer. Her most recent injury occurred on June 5, 2002. That claim (No. 02-381183) is allowed for "lumbosacral strain and sprain; lumbar herniated discs at L3-4, L4-5."
 {¶ 16} 2. On March 9, 2007, relator filed an application for PTD compensation.
 {¶ 17} 3. On July 18, 2007, at the commission's request, relator was examined by Waleed N. Mansour, M.D. Dr. Mansour examined relator for all the allowed conditions of her six industrial claims. In his narrative report, he concluded that relator has an 11 percent whole body impairment relating to the six industrial claims.
 {¶ 18} 4. On July 18, 2007, Dr. Mansour completed a physical strength rating form on which he indicated that relator is capable of sedentary work.
 {¶ 19} 5. On the PTD application, relator indicated that she completed the tenth grade, did not graduate from high school, and did not obtain a certificate for passing the General Educational Development ("GED") test. She quit school in 1971 to care for her sick father. She has not attended a trade or vocational school.
 {¶ 20} 6. Among the other information sought, the PTD application form posed three questions: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given the choice of "yes," "no" and "not well," relator selected the "yes" response to all three queries.
 {¶ 21} 7. The application form also asks the applicant to provide information regarding work history. Relator indicated that she was employed as a certified nursing *Page 8 
assistant at a nursing home from October 1997 to June 2002. Prior to that, she was employed at a "nursery" for approximately ten years. Prior to that, she worked at a McDonalds restaurant preparing "fast food" during 1985.
 {¶ 22} 8. The application form asks the applicant to describe the basic duties of each job listed on the work history. For the certified nursing assistant job, relator wrote: "bathing[,] walking, total care of disabled people." For the "nursery" job, relator wrote: "package ship transfer plants in a nursery."
 {¶ 23} 9. In support of her application, relator submitted a report dated August 2, 2007 from John Ruth, a vocational expert. The Ruth report states:
 * * * This woman had previously worked as a Nurse's Aide, Greenhouse Laborer, and Fast Food Worker. The following information was gathered through use of The Dictionary of Occupational Titles:
TBTABLE
OCCUPATION * * * WORK CAPACITY
Nurse's Aide * * * Medium
Greenhouse Laborer * * * Heavy
Fast Food Worker * * * Light
TB/TABLE
 In summation, it is this evaluator's opinion that Ms. Rebecca Ankenbauer will be unable to successfully seek or sustain remunerative employment now or in the future. Serious barriers to competitive employment include a chronological age of 52 placing her in the closely approaching middle age category which may reduce her ability to adapt to new work situations and to do work in competition with others, limited educational experience (9th grade) not allowing this woman to perform semiskilled or skilled occupations but restricting her to entry level unskilled work tasks, limited sitting/standing/walking tolerance interfering with this woman's ability to perform all aspects of sedentary work tasks, medications causing unusual side effects interfering with the safety of Ms. Ankenbauer and potentially interfering with the safety of others working around her in an industrial *Page 9 
environment, poor range of motion capabilities not allowing this woman to perform work activities in an overhead, bent or crouched position which will not allow her to perform all aspects of sedentary work, poor manual dexterity capabilities not allowing this woman to perform assembly work or jobs involving any significant degree of manual manipulation activities, very limited lifting capacity (less than 10 pounds) not allowing her to perform light, medium, or heavy work as she had done in the past thus significantly reducing vocational options, and a clear lack of transferability of past relevant work experience to a more sedentary occupation this woman could physically perform preventing her from bringing salable vocational skills to an employment interview or work site.
 {¶ 24} 10. Following an October 12, 2007 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The order states:
 This order is based upon the report of Dr. Mansour.
 Dr. Mansour, who examined the Injured Worker on behalf of the Industrial Commission indicated that the Injured Worker has reached maximum medical improvement, and as she cannot return to her former position of employment, but is capable of performing sedentary work which means exerting up to ten pounds of force frequently, to lift, carry, push, pull, or otherwise move objects. He sums his opinion by indicating that the Injured Worker has a 11% Permanent Partial Impairment with respect to the whole person as it relates to the Injured Worker's six industrial injuries from an orthopedic standpoint.
 Based upon the opinion of Dr. Mansour, who examined the Injured Worker on all of the allowed conditions for which the Injured Worker's six industrial injuries are recognized, the Staff Hearing Officer concludes that the Injured Worker is medically capable of performing some sustained renum-erative [sic] employment i.e. sedentary work. Therefore, the Staff Hearing Officer finds the discussion of the Injured Worker's non-medical disability factors are now in order.
 The Injured Worker is 52 years of age and has a ninth grade education. The Injured Worker has not obtained her GED. Per the Injured Worker's IC-2 Application on file, as well as *Page 10 
testimony at hearing, the Injured Worker indicates the ability to read, write and do basic math well. The Injured Worker's work history consist[s] of working early on in her working career as a manager for Jay's Restaurant for approximately one year, as well as, working for a plant nursery for approximately ten years performing such work as packaging and shipping plants, but primarily worked the bulk and latter portion of her working career as a Certified Nursing Assistant for the above-stated Employer for approximately six years performing duties of bathing, walking, and taking care of totally disabled elderly people.
 Mr. Ruth performed a Vocational evaluation on the Injured Worker on behalf of the Injured Worker. Upon reviewing the Injured Worker's work history, age and education, he found no work experience which would transfer to sedentary work. However, upon reviewing the Injured Worker's work history, age, and education, the Staff Hearing Officer is not persuaded nor concurs with Mr. Ruth's opinion and finds that the Injured Worker's non-medical disability factors on a whole do not have a negative impact on the Injured Worker's ability to work or be re-trained, but rather are somewhat positive factors from a Vocational standpoint.
 As indicated before, the Staff Hearing Officer finds that the Injured Worker's age is definitely a positive factor as the Injured Worker's age of 52 leaves approximately 15 years of working life ahead of her.
 The Staff Hearing Officer finds that the Injured Worker's education is a neutral factor. The Staff Hearing Officer finds that the Injured Worker's ninth grade education, in and of itself, does not indicate a lack of intellectual ability to be retrained as the Injured Worker indicates per her IC-2 Application on file, her ability to read, write, and do basic math well. Furthermore, the Staff Hearing Officer notes that although the Injured Worker's ninth grade education can be classified as a limited education, it generally would not affect her ability to meet the basic demands of entry level sedentary work.
 Finally, the Staff Hearing Officer finds that the Injured Worker's work history is also a positive factor. The Injured Worker's occupation as a Certified Nursing Assistant indicates employment which can be classified as a semi-skilled *Page 11 
occupation which required training in order to be certified, which indicates and suggests that the Injured Worker has the skills and qualifications to perform other occupations or at least be re-trained to perform some other occupation i.e. entry level on a sedentary basis based upon her prior semi-skilled work history setting.
 In summary, the Staff Hearing Officer concludes that the Injured Worker's non-medical disability factors on a whole, favor re-employment, i.e., that the positive age and work history factors out-weigh the neutral education factor and that the Injured Worker can at least be re-trained to perform some other occupation based upon her young age and prior semi-skilled work history or at least have the ability to access other unskilled work in the economy.
 Therefore, based upon the limited physical restrictions as indicated by Dr. Mansour, coupled with the Injured Worker's semi-skilled work history and relatively young age, the Staff Hearing Officer finds on a whole that the Injured Worker's non-medical disability factors favor re-employment or that the Injured Worker can at least by [sic] re-trained to perform some other occupation, and is therefore, not permanently and totally disabled.
 {¶ 25} 11. On November 5, 2007, relator, Rebecca S. Ankenbauer, filed this mandamus action.
Conclusions of Law: {¶ 26} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 27} For its threshold medical determination, the commission, through its SHO, relied exclusively upon the report of Dr. Mansour who opines that the industrial injuries permit sedentary employment. Here, relator does not challenge the report of Dr. Mansour, nor does she challenge the commission's determination that she is medically capable of sedentary employment. However, relator does challenge the commission's nonmedical analysis. *Page 12 
 {¶ 28} In his order, the SHO finds that relator's age of 52 years is a positive factor and that her ninth grade education is a neutral factor. The SHO further finds that relator's position as a certified nursing assistant was a semi-skilled position. The SHO concludes that relator's work history is also a positive factor.
 {¶ 29} The SHO reasons that the positive age and work history factors outweigh the neutral education factor and, thus, relator can be retrained to perform some type of sedentary work.
 {¶ 30} Citing State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, relator poses three queries: (1) How is the ninth grade education a neutral factor? (2) How is relator's age of 52 a positive factor? and (3) How is the certified nursing assistant job semi-skilled?
 {¶ 31} According to relator, there are no explanations in the order that address the above three queries. According to relator, this is a violation of Noll. The magistrate disagrees.
 {¶ 32} Analysis begins with the commission's rules applicable to adjudication of PTD applications. Those rules are set forth at Ohio Adm. Code 4121-3-34.
 {¶ 33} Ohio Adm. Code 4121-3-34(B) sets forth some definitions pertinent here.
 {¶ 34} Ohio Adm. Code 4121-3-34(B)(3) is captioned "Vocational factors."
Thereunder, the following definitions are found:
 (a) "Age" shall be determined at time of the adjudication of the application for permanent and total disability. In general, age refers to one's chronological age and the extent to which one's age affects the ability to adapt to a new work situation and to do work in competition with others. *Page 13 
 (b) "Education" is primarily used to mean formal schooling or other training which contributes to the ability to meet vocational requirements. The numerical grade level may not represent one's actual educational abilities. If there is no other evidence to contradict it, the numerical grade level will be used to determine educational abilities.
 (iii) "Limited education" means seventh grade level through eleventh grade level. Limited education means ability in reasoning, arithmetic and language skills but not enough to allow an injured worker with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. Generally, seventh grade through eleventh grade formal education is limited education.
 {¶ 35} Ohio Adm. Code 4121-3-34(B)(c) is captioned "Work experience."
Thereunder, the following definitions are found:
 (i) "Unskilled work" is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. Jobs are unskilled if the primary work duties are handling, feeding, and off bearing (placing or removing materials from machines which are automatic or operated by others), or machine tending and a person can usually learn to do the job in thirty days and little specific vocational preparation and judgment are needed.
 (ii) "Semi-skilled work" is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require close attention to watching machine processes or inspecting, testing, or otherwise looking for irregularities or tending or guarding equipment, property, material, or persons against loss, damage, or injury and other types of activities which are similarly less complex than skilled work but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly in a repetitive task.
 (iii) "Skilled work" is work which requires qualifications in which a person uses judgment or involves dealing with people, factors or figures or substantial ideas at a high level *Page 14 
of complexity. Skilled work may require qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity to be produced. Skilled work may require laying out work, estimating quality, determine the suitability and needed quantities of materials, making precise measurements, reading blue prints or other specifications, or making necessary computations or mechanical adjustments or control or regulate the work.
 {¶ 36} Regarding the SHO's determination that relator's ninth grade education is a "neutral" factor, the SHO correctly observes that a ninth grade education is viewed as a "limited education" under the rules. The SHO also correctly observes that a ninth grade education does not automatically indicate lack of intellectual ability to be retrained, given relator's admitted ability to read, write, and perform basic math. This magistrate further observes that relator indicates in her PTD application that she had to quit school to take care of her sick father. Clearly, relator's quitting school does not suggest a lack of intellectual ability under those circumstances.
 {¶ 37} The magistrate observes that the SHO's positive-neutral analysis is the SHO's own way of evaluating or weighing the nonmedical factors. That is, the commission's rules do not specifically provide for a three-fold categorization of the nonmedical factors into negative-neutral-positive. However, application of this type of analysis to the nonmedical factors is not an abuse of discretion. Nor is this type of analysis by categorization being challenged here.
 {¶ 38} Accordingly, the SHO did not abuse his discretion in concluding that relator's ninth grade education was a so-called "neutral" factor. Moreover, the SHO's order does explain how the SHO reached that conclusion. While ninth grade is a limited education, there is no evidence of a lack of intellectual capacity. Given relator's ability to *Page 15 
read, write, and do basic math, the SHO could reasonably conclude that relator's ninth grade education will not prohibit retraining. SeeState ex rel. West v. Indus. Comm. (1996), 74 Ohio St.3d 354.
 {¶ 39} Given the commission's definition of semi-skilled work, this magistrate cannot say that the SHO abused his discretion in determining that relator's job as a certified nursing assistant was semi-skilled. Moreover, it must be remembered that the commission is considered to be the expert on the nonmedical factors. State ex rel. Jackson v. Indus.Comm. (1997), 79 Ohio St.3d 266.
 {¶ 40} The SHO's determination that relator's former job was semi-skilled is not clearly erroneous and no explanation need be given to support the determination. Noll does not require an explanation for every finding made by the commission in its analysis of the nonmedical factors, particularly where the finding is not an ultimate finding of the commission.
 {¶ 41} Regarding the SHO's determination that relator's age of 52 years is a positive factor, in State ex rel. Ellis v. McGraw EdisonCo. (1993), 66 Ohio St.3d 92, the commission denied the PTD application of an injured worker who was 51 years of age at the time his PTD application was heard. In denying the application, the commission referred to the claimant's "relatively young age." Id. at 93. In upholding the commission's order, the court states that the commission "exercised its prerogative in concluding that, at age fifty-one, claimant was young, not old, and that his age was a help, not a hinderance" to his reemployment. Id. at 94.
 {¶ 42} Here, relator was one year older than the claimant inEllis. It is thus difficult to see how it can be an abuse of discretion for the commission here to determine that age *Page 16 
is a positive factor. Moreover, the commission explained why age 52 was viewed as a positive factor — relator has many years of working life ahead of her.
 {¶ 43} Based upon the above analysis, it is clear that the commission did not abuse its discretion in its analysis of the nonmedical factors. Moreover, Noll was not violated.
 {¶ 44} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1